# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00796-CR

**In re Harold Arthur White**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 51240, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In October 2001, Harold Arthur White was convicted of attempted sexual assault and sentenced as a habitual offender to sixty-five years' imprisonment. The conviction was affirmed on appeal. *White v. State*, No. 03-01-00616-CR, 2002 Tex. App. LEXIS 5738 (Tex. App.—Austin Aug. 8, 2002, pet. ref'd). White now appeals the district court's order dismissing, and thus denying, his second and third pro se motions for post-conviction DNA testing.[1] *See* Tex. Code Crim. Proc. Ann. arts. 64.01-.05 (West 2006 & Supp. 2008). The motions, which were consolidated for consideration by the trial court, were denied in a written order signed October 21, 2008. We affirm the order.

Glenn Sinclair testified that on the night of July 8, 2000, he was driving in a rural area near Stillhouse Hollow Lake when he encountered some "kids" in a pickup who told him that "a guy

---

[1] White's first motion for DNA testing was denied on January 26, 2004. There was no appeal.

down there is chasing a naked woman." Sinclair continued on and, when he got "down there," a naked, hysterical woman ran up to his pickup. This woman told Sinclair that a man was chasing her and that he had beaten her and tried to rape her. As the woman spoke to him, a man wearing only his pants emerged from the trees and told Sinclair to leave. The man seized the complainant and took her to a car parked nearby. Sinclair testified that both the man and the woman appeared to be intoxicated.

Two sheriff's deputies were dispatched to the scene in response to Sinclair's call. They found the complaining witness, naked, standing beside a car. White got out of the car, fastening his pants. When the officers identified themselves, White ran. Clothing and personal items belonging to White and the complainant were in and around the car.

The complainant testified that she and White were co-workers, had known each other for about a year, and had engaged in consensual sexual intercourse on a previous occasion. She testified that on the night in question, she refused White's sexual advance. According to the complainant, White became angry and began to hit her. She testified that she suffered a bloody nose and that she used a shirt to stop the bleeding. She said this shirt "had blood all over it."

In his testing motions, White sought to have DNA testing performed on a white shirt introduced in evidence as State's exhibit 8. The testimony reflects that this shirt was found at the scene of the alleged attack, and that the complainant covered herself with the shirt after the deputies arrived. The complainant testified that this was not the shirt on which she bled. That shirt, apparently, was not recovered. One of the deputies agreed that if the complainant had been bleeding, it was possible that she would have gotten blood on exhibit 8. The deputy testified that he saw a

2

stain on the shirt that could be blood, but there was no scientific evidence confirming this. White now claims that the stain was motor oil.

The trial court denied the testing motions on two grounds. First, the court concluded that the motions were procedurally deficient. This is correct, as neither motion was supported by an affidavit. *See id*. art. 64.01(a). Second, the court concluded that there was no issue of identity in the case. *See id*. art. 64.03(a)(1)(B). This, too, is correct. White does not deny being with the complainant on the night in question. Instead, White claims that he did not assault the complainant. White argues that he is entitled to DNA testing in order to impeach the complainant's credibility with respect to the claimed attack.

White argues that if testing shows that there is no blood on the shirt, this would demonstrate that the complainant was lying about being attacked. But the record reflects that the deputies testified that they found no blood at the scene. The nurse who examined the complainant after the alleged attack also testified that she saw no blood. Assuming that testing confirmed the absence of blood on exhibit 8, this would not exculpate White, but would merely be one additional impeaching factor. White has not shown by a preponderance of the evidence that he would not have been prosecuted or convicted if there had been scientific evidence confirming the absence of blood on the shirt. *See id*. art. 64.03(a)(2)(A).

The district court's order is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   October 15, 2009

Do Not Publish